UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

DOREL ROMAN                           CIVIL ACTION NO. 6:07-cv-1516

VERSUS                                JUDGE HANNA

WESTERN MANUFACTURING, INC.,          BY CONSENT OF THE PARTIES
ET AL.

## RULING ON MOTION

Before the Court is the plaintiff's motion to compel defendants Kenneth Ray
Thompson and Tiare, Inc. d/b/a Western Manufacturing to provide complete answers
to written discovery served on July 25, 2013 and responded to on August 26, 2013.
(Rec. Doc. 255).  The plaintiff also seeks sanctions.  The motion is opposed.  Oral
argument was held on September 24, 2013, and the Court accepted evidence in
support of the motion.  For the purposes of this motion, this Court makes the
following:

## FINDINGS OF FACT

•   Dorel Roman originally filed this lawsuit in September 2007, alleging that he
    was injured when a high pressure hose blew off a mobile stucco pumping
    machine known as the Predator Pump that was manufactured by defendant
    Western Manufacturing, Inc.

• Western Manufacturing, Inc. appeared in the lawsuit and contended that the court did not have personal jurisdiction over it. (Rec. Doc. 8). Pursuant to an order, the plaintiff was given an opportunity to conduct discovery limited to personal jurisdiction. (Rec. Doc. 11) The plaintiff and a co-defendant propounded discovery requests on Western Manufacturing, Inc. directed to the issue of personal jurisdiction. Among the requests was the following document request: "Documents evidencing the corporate structure of Western, including, but not limited to, whether Western is either wholly or partially owned by any other company, corporation, partnership and/or individual." (Rec. Doc. 221-1, p.18) Western lodged an objection that the information sought was outside the scope of matters relating to personal jurisdiction and stated that, upon receiving a final ruling from the court as to the proper venue, the response would be supplemented; otherwise, Western stated that it "was a privately held company and is not owned, operated, or controlled by any entity residing, domiciled, or existing within the state of Louisiana." (Id.) This response was never supplemented.[1] (Rec. Doc. 248, p. 17)

---

[1]        Fed. R. Civ. P. 26(e)(1) states that once a party has responded to requests for production, the party "must supplement or correct its. . . response. . . in a timely manner if the party learns that in some material respect the. . . response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process. . . ."

- An interrogatory was propounded asking Western Manufacturing, Inc. to set forth "[t]he correct name of your corporation if it is inaccurate in the Petition for Damages." (Rec. Doc. 221-1, p. 15) Western's answer was to lodge an otherwise frivolous objection that the request was outside the scope of any matters related to personal jurisdiction and state "upon receiving a final ruling from the court as to the proper venue and location of this case, discovery responses will be supplemented. However, and without waiving any objections it is submitted that California is the state of incorporation, California is the principal place of business now and at the time of the occurrence." (Rec. Doc. 221-1, p. 15) This answer was never supplemented. (Rec. Doc. 238, pp. 17-18) The record reflects that Darren Dyck, the general manager for Western Manufacturing, Inc., provided information to counsel. (Rec. Doc. 221-1, p. 14)

- The plaintiff also tried to obtain a deposition pursuant to Fed. R. Civ. P. 30(b)(6) on the issue of personal jurisdiction, which Western Manufacturing, Inc. moved to quash. (Rec. Doc. 19) The record reflects that the corporate deposition was delayed because Western Manufacturing, Inc. was "having difficulty choosing a corporate representative." (Rec. Doc. 21-7) The Motion to Quash was denied. (Rec. Doc. 32)

- Darren Dyck was designated as the corporate representative.[2]   After the deposition, defense counsel represented to the court that "Western is a California Corporation with its headquarters and only facility located at 1160 Olympic Drive, Corona California.  Western is not a publicly traded company, nor is it a subsidiary of any company and [sic] nor does it have subsidiaries of its own."  (Rec. Doc. 37, p. 1)  In the corporate deposition taken in March 2008, Mr. Dyck testified that Kenny Thompson was the owner of the company.  (Rec. Doc. 37-1, p. 5, Evidentiary Hearing Ex. D-3, pp. 10, 59)

- In her Report and Recommendation, Magistrate Judge Methvin found that personal jurisdiction existed over Western Manufacturing, Inc. because "Western had full knowledge that the Predator Pump was purchased by a Louisiana company, and shipped to Louisiana.  There is no doubt that Western delivered the Predator Pump into the stream of commerce with the knowledge that it would ultimately end up in Louisiana."  (Rec. Doc. 40, p. 7)

- Western's objections to the Report and Recommendation were classified as "frivolous" by the district court and "due to the frivolous nature of each argument defense counsel has submitted in support of each objection, which

---

[2]     Mr. Dyck also appeared as the designated corporate representative at the trial of this matter and testified as a witness at the trial.

has resulted in a waste of judicial resources," counsel was ordered to review Fed. R. Civ. P. 11 and submit a letter to the court, affirming that he had reviewed  that rule and would comply with Rule 11 in all future submissions to the court.  (Rec. Doc. 43)  Counsel was also instructed that all future submissions to the court were to rely upon binding jurisprudence unless counsel attested that there was no binding authority on a given issue.  (Id.)

- In June 2009, Mr. Dyck was tendered again as a corporate representative for Western Manufacturing, Inc.  He testified that the company was incorporated in California and that he was not aware of any other owners besides Kenny Thompson.  (Evidentiary Hearing Ex. D-1, pp.20-21)

- In October 2009, Kenneth Thompson testified that he was the president of both Western Manufacturing and Opal Service, Inc., that Opal Service was a holding company that owned all of the stock of Western Manufacturing, and that he owned all of the stock of Opal Service.  (Evidentiary Hearing Ex. P-7, pp. 6-8)

- Multiple representations were made by the defendant and its counsel before and after trial identifying the defendant as Western Manufacturing, Inc.  These include but are not limited to a motion to dismiss, answer, and cross-claim by Western Manufacturing, Inc. (Rec. Doc. 3), two Rule 26(f) reports by Western

-5-

Manufacturing, Inc. (Rec. Doc. 55, 89), and a stipulation, set forth in the pretrial order, that the Predator Pump was manufactured by Western Manufacturing, Inc. (Rec. Doc. 121 at 19)  In its will-call witness list filed days before trial, Darren Dyck was identified as the general manager of Western Manufacturing, Inc.  (Rec. Doc. 125 at 1)

• Unbeknownst to the plaintiff, on June 9, 2010, a company was formed by Mr. Thompson named Western *Equipment* Manufacturing, Inc*.,* which listed a business start date with the State of California as August 2, 2010 – approximately two weeks before the pretrial conference in this matter. (Evidentiary hearing Ex. P-4,6; Rec. Doc. 123) (emphasis added)  The company operated at the same address as Western Manufacturing, Inc. and the business of this company was similar if not identical to that of Western Manufacturing, Inc., including but not limited to the manufacture of the Predator Pump.  (Rec. Docs. 213-1, Exhibit 2, p. 73; Rec. Doc. 213-1, Exhibits 9 and 10)

• The matter was tried to a jury on September 20 through 30, 2010.  Closing arguments, jury instructions, and jury deliberations took place on September 29.  Deliberations began at 11:15 a.m. Central Daylight Time.  Court was

adjourned at 5:35 p.m., and deliberations continued on September 30 until a

verdict was reached.  (Rec. Doc. 141-142)

• On September 29, at 5:00 p.m. Pacific Daylight Time, while the jury was

deliberating in this matter, three UCC liens were filed in California – one

listing the debtor as Tiare, Inc. in favor of Opal Service, Inc.; one listing the

debtor as Western Equipment Manufacturing, Inc. in favor of Opal Service,

Inc., and one listing the debtor as Western Equipment Manufacturing, Inc. in

favor of Tristar Financial, Inc.  (Rec. Doc. 213-1, Exhibits 6 through 8)  All

three liens showed the collateral of the debtor to be "Accounts Receivable,

Inventory of Supplies and Materials, Office Furniture and Equipment."  (Id.)

• According to the corporate disclosure statement recently filed herein, Opal

Service, Inc. owns 100% of the stock in Western Equipment Manufacturing,

Inc., Triumph Sales, Inc., Tri-star Financial Inc., and Avanti Agency

Corporation.  (Rec. Doc. 250-2 through 250-6)[3] Tri-Star Financial is a lending

company of which Mr. Thompson is the president.  (Rec. Doc. 213-1, Exhibit

2, p. 42).  Tiare, Inc. d/b/a/ Western Manufacturing is described as having no

---

[3]        Triumph Sales, Inc. owns the facility and equipment where the Predator pump was manufactured. (Rec. Doc. 213-1, Exhibit 2, p. 41-44).  Avanti is a payroll company for Western, and Mr. Thompson testified that he owned Avanti at the time of the judgment debtor examination discussed below.  (Rec. Doc. 213-1, Exhibit 2, p. 62).

parent corporation.  (Rec. Doc. 224) Mr. Thompson admitted that he was a common officer in Tiare, Inc., Opal Service, Inc., and Western Equipment Manufacturing, Inc. with the **sole** authority to make any decisions regarding the operations of Western Manufacturing.  (Rec. Doc. 213-1, Exhibit 2, p. 62-63)

• The jury found in favor of the plaintiff, and this Court's amended judgment was issued on November 29, 2010 (Rec. Doc. 163), awarding the sum of $545,641.26 to Mr. Roman, plus pre-judgment interest from the date of judicial demand to the date of entry of the judgment plus post-judgment interest on all sums from the date of the amended judgment until paid.  Mr. Roman died, and his widow was substituted as the plaintiff in the lawsuit.  (Rec. Doc. 197)

• In December 2010, both parties appealed the judgment, and since no supersedeas bond was provided by Western, the plaintiff obtained an order allowing it to register the judgment in other districts pursuant to 28 U.S.C. §1963 "where Western Manufacturing Inc. has assets." (Rec. Doc. 201-1, 202) On appeal, the defendant continued to refer to itself as Western Manufacturing, Inc., however, in the Certificate of Interested Persons contained in Western's brief, Tiare, Inc. is identified for the first time in this record as "an owner of Western Manufacturing, Inc."  (Evidentiary Hearing Ex. D-15)

-8-

- The record on appeal was certified on June 16, 2011. (Rec. Doc. 195) On July 26, the defendant filed its brief with the court of appeals in which Tiare, Inc. is mentioned in the certificate. (U.S. Fifth Circuit Court of Appeals Case# 10-31271, Rec. Doc. 42) Unbeknownst to the plaintiff, approximately one month later, on August 31, 2011, the company named as the defendant in this case was closed by Mr. Thompson. (Rec. Doc. 229-5) The defendant's reply brief was filed on October 3, 2011 and Michael Dawe enrolled for Western Manufacturing, Inc. *pro hac vice* on November 23, 2011, yet no mention was made of this transaction.[4] (Court of Appeals Rec. Docs. 53, 68) On December 28, 2011, Kenneth Thompson sold the stock in the "shelved corporation" or "valueless company" (Western Manufacturing) to William Wiehl (also sought to be added as a defendant herein) for $5,000.00. (Rec. Doc. 229-5; Rec. Doc. 213-1, Exhibit 2, pp. 65, 71) Oral argument was heard on March 7, 2012, and supplemental submissions were made by Western Manufacturing, Inc. to the court on March 13, yet no mention was made that the "shelved" or "valueless" corporation named as the defendant had been closed and its stock sold. (Court of Appeals Rec. Docs. 72, 77)

---

[4]    Mr. Dawe acted as counsel for Western Manufacturing, Inc. in California.

-9-

- On September 10, 2012, the judgment was affirmed as mandate by the court of appeals.  (Rec. Doc. 203)   On that same date, Michael Dawe wrote to plaintiff's counsel the following:  "We no longer represent or have any affiliation with the judgment debtor."  (Rec. Doc. 213-1, Exhibit 1)

- On November 5, 2012, Mrs. Roman filed an Affidavit and Request for Issuance of Writ of Execution against Western Manufacturing, Inc. in the Central District of California, along with an Application for Judgment Debtor Examination.  (*Roman v. Western Manufacturing, Inc*., Doc. 5:12-cv-1943, C.D. Cal.)

- At the judgment debtor examination on January 29, 2013, Michael Dawe, apparently though not obviously appearing as counsel for Kenneth Thompson, stated:  "We answered the lawsuit  as  Western  Manufacturing, Incorporated . . . .  Technically, that was all erroneous.  Western Manufacturing, Inc., was a dba of Tiare, Inc. . . .  We will stipulate that during the course of that lawsuit, our law firm, representing the punitive (sic) entity, Western Manufacturing, Inc., proceeded to file pleadings on behalf of Western Manufacturing, Inc. not appreciating that in fact, the entity Western Manufacturing was a dba of a company called Tiare, Inc. . . .  We certainly answered and appeared and proceeded on behalf of an entity called Western Manufacturing, Inc., not

knowing or appreciating that that was actually a dba. . .  But for the entire period of the lawsuit, Tiare, Inc. was the actual corporation, and it did business as Western Manufacturing."  (Rec. Doc. 213-1, Exhibit 2, pp. 4-5)[5]

• Mr. Dawe also took the position that there was no jurisdiction over Mr. Thompson to discuss anything about his employment with Opal, that the judgment debtor examination was limited to Western Manufacturing, which was the judgment debtor, and that there was no jurisdiction to examine Mr. Thompson on alter ego issues.  (Rec. Doc. 213-1, Exhibit 2, pp. 5-6, 52-53) Pursuant to this position, Mr. Dawe instructed Mr. Thompson not to respond to questions on multiple occasions. Mr. Thompson, whose current role in Tiare, Inc. d/b/a Western Manufacturing, is unknown, testified that Tiare was responsible for the judgment even though it was closed by him and Mr. Wiehl owned all the stock.  (Rec. Doc. 213-1, Exhibit 2, p. 63-65)

• In her motion to amend pursuant to Fed. R. Civ. P. 25(c), Mrs. Roman alleged that Kenneth R. Thompson, William C. Weihl, and a number of companies owned and/or controlled by them allegedly engaged in a scheme, during the

---

[5]       This Court is not certain who Mr. Dawe intended to include in his pronoun "we" when this stipulation was offered since Tiare, Inc. d/b/a Western Manufacturing was closed, the stock in Tiare, Inc. belonged to Mr. Wiehl, and Mr. Dawe previously represented to plaintiff's counsel, using the same pronoun, that "we no longer represent or have any affiliation with the judgment debtor." He identified the judgment debtor as Western Manufacturing.

pendency of the litigation, to deplete Western Manufacturing, Inc. of its assets and set up sham successor companies in order to avoid paying the judgment. (Rec. Doc. 207 at 2-3)

• Since the originally-named defendant was represented to be a nonentity, the motion to amend was granted (Rec. Doc. 209), and Kenneth R. Thompson; William C. Weihl; Tiare, Inc. d/b/a Western Manufacturing; Opal Service, Inc.; Western Equipment Manufacturing, Inc.; Triumph Sales, Inc.; Tristar Financial, Inc.; and Avanti Agency Corporation were made defendants.

• Pursuant to its obligations under *Chambers v. NASCO, Inc*. 501 U.S. 32, 44-45 (1991), this Court initiated an investigation into the plaintiff's allegations of fraud and fraud on the court and scheduled an evidentiary hearing for July 23, 2013 for the sole purpose of this Court's investigation into those allegations. (Rec. Doc. 209, 248, p. 3-4)

• Mrs. Roman submitted documents (Rec. Doc. 213 and the exhibits thereto), which showed (among other allegations) that Western Equipment Manufacturing, Inc. manufactures the same products that formerly were manufactured by Tiare; that Western Equipment Manufacturing, Inc. operates out of the same facility where Tiare operated before its assets were sold; that Triumph Sales, Inc. owns the manufacturing facility and equipment used in the

-12-

manufacture of the same products manufactured by Tiare and Western Equipment Manufacturing, Inc.; that Tiare, Inc. paid the litigation costs in this matter; and that the payroll company owned by Thompson called Avanti Agency Corporation paid Tiare's employees.

- On June 25, 2013, "Western Manufacturing, Inc." moved to substitute attorney L. Lane Roy for Kevin Landreneau, who had previously represented Western Manufacturing, Inc. in the litigation.  (Rec. Doc. 215)

- The next day, Western Manufacturing, Inc. moved for a continuance of the evidentiary hearing (which was denied) and requested a status conference with the Court.  (Rec. Doc. 217)  A status conference was held on July 2, at which time Mr. Roy confirmed that he represented *only* Western Manufacturing, Inc. (Rec. Doc. 220, 266, pp. 2-3) However, in a letter sent to the Court, Mr. Roy raised "concerns" for the other parties sought to be added by the amended complaint. (Rec. Doc. 220) This Court raised the issue of counsel representing an alleged non-entity,  whose interests may be adverse to the parties sought to be added in the amended complaint and that Mr. Roy did not have standing to object on their behalf at that point. (Rec. Doc. 266, pp. 4, 9-10, 17) This Court made clear that the evidentiary hearing was only to investigate allegations of fraud and fraud on the court and that the newly added parties were free to

contest jurisdiction if that is what they chose to do. (Rec. Doc. 266, pp. 4,  9-10, 16-18)

• On July 18, 2013, Thompson and Tiare, Inc. d/b/a Western Manufacturing, both represented by Mr. Roy, filed a motion to dismiss the claims asserted against them.  (Rec. Doc. 223)  In the motion, it is argued that the court lacks personal jurisdiction over Thompson, subject-matter jurisdiction over Thompson and Tiare, that venue is improper, and that the plaintiff's claims have prescribed.  Mr. Roy, on behalf of Thompson, argued:  "To the extent Plaintiff's claims against Mr. Thompson are based solely on a single business enterprise or alter-ego theory, as more fully described above those claims are collection issues which are not before this Court and are subject to Docket NO. 5:12-cv-01943-GHK-SP, United States District Court, Central District of California, Eastern Division-Riverside and should be dismissed." (Rec. Doc. 223-1, p. 12)

• On the same day that the motion to dismiss was filed, Tiare filed a motion to vacate the referral to this Court (Rec. Doc. 225) and another motion to continue the evidentiary hearing (Rec. Doc. 226)

• Tiare, represented by Mr. Roy, made the following statements in its memorandum in support of the motion to vacate the referral:

-14-

(a)   "Plaintiff alleges that during the judgment debtor examination in California she learned for the first time Western was a nonentity and actually was a d/b/a of Tiare, Inc.  This is factually correct, and the confusion regarding the identity of the defendant in the case below, at least the name of it, came about due to inadvertence on the part of the Defendant, causing the judgment to be entered in the incorrect name. Tiare knew **and always knew** that it was in fact the proper Defendant, recognized that the legal responsibility of the nonentity, Western Manufacturing, was actually its own liability as Western was a trade name used by Tiare; and, thus, did not consider the matter of the specific named Defendant as being critical." (Rec. Doc. 225-1 at 2-3) (emphasis added)

(b)   "Tiare agrees that the judgment in this matter should be and is collectable as against Tiare."  (Rec. Doc. 225-1 at 3)

(c)   "The correct name of Western Manufacturing, Inc. is Tiare, Inc.  Tiare, Inc. does not dispute it is liable for the judgment in this case."  (Rec. Doc. 225-1 at 2, fn. 1)

• Despite these representations that Tiare, Inc. was the correct judgment debtor which had consented to this Court's jurisdiction, albeit wearing its Western

-15-

Manufacturing hat, Tiare persisted in its motion to vacate the referral.  The motion was denied by the district court who noted that "counsel for Tiare advised the Court that notwithstanding its filings, Tiare does **not** have the ability to pay the judgment rendered on behalf of the plaintiff in this matter, despite Tiare's admissions that it is liable for the judgment and that that judgment **is collectible against Tiare**. . . .   According to present counsel for Tiare, he never intended to convey, through the foregoing statements, that Tiare was *able* to pay the judgment for which it admits it is responsible. Rather, he argued he did not intend to suggest the judgment '*was* collectable' when he admitted 'that the judgment in this matter should be and *is collectable* . . .' an ambiguity of language and perhaps intent on the part of the defendant which seems to echo, at least, the ambiguity of conduct plaintiffs now complain of in their more recent filings." (Rec. Doc. 234, p. 2, n. 1) (emphasis in original).  The second motion to continue was denied.

- In the prehearing memorandum filed by Mr. Roy on behalf of Western Manufacturing, Inc., footnote 1 reads as follows:  "Western Manufacturing, Inc.'s correct legal name is Tiare, Inc.  Tiare, Inc. has been doing business as Western Manufacturing since 1967." (Rec. Doc. 229, p. 1, n.1)  Counsel also represented that "if Plaintiff had done her due diligence and propounded

discovery before making such allegations [that Western sold its assets to avoid paying the judgment] she would have found that in September **2002** Western's assets were sold through its holding company Opal Service, Inc. to Triumph Sales, Inc." (Rec. Doc. 229, p. 15) (emphasis added) Counsel also represented that "Plaintiff failed to ask for any corporate documents or any financial information related to Western." (Id.) Finally, counsel represented that "[h]ad Plaintiff been concerned that there was any transfer of assets, fraudulent or otherwise, she had only to question Mr. Thompson under oath.  She failed to exercise that right."  (Id. at p.18).  Finally, counsel made the emphasized statement that **"Tiare, Inc. has not transferred or divested any assets from which Plaintiff could otherwise have collected her judgment."**  (Id. at 19) (emphasis in original).

• Mr. Dawe prohibited plaintiff's counsel from making these types of inquiry, as the judgment debtor examination reflects.  Mr. Thompson, as president of Western Manufacturing, testified in **2009** that Western employed 16 to 20 people, that it made a product called the Predator Pump, that "probably 50 percent" of Western's business was generated by the sale of the Predator pump, that about 100 units were sold in 2008 at about $30,000 per pump, and that Western had about $7 million in revenue in 2007 and 2008.  He confirmed this

testimony at the judgment debtor examination.  (Cf. Evidentiary hearing Ex.

P-4, pp. 26, 32, 82-83; Rec. Doc. 213-1, Exhibit 2, p. 32-36)

•     The evidentiary hearing to investigate the plaintiff's allegations of fraud and

fraud on the court began on July 23, 2013.  Evidence was accepted from both

sides.  It has not yet been completed as Mr. Thompson, who was served, failed

to appear.

•     At the hearing, Mr. Roy appeared on behalf of "the manufacturer which is

Tiare, Inc. d/b/a Western Manufacturing."  (Rec. Doc. 248, p. 2) Counsel for

Western Manufacturing, Inc. who appeared in that capacity during the trial,

Kevin Landreneau, was present and represented to this Court:

> I believed the whole time that Western Manufacturing, Inc. was
> the proper party defendant, and I defended them in a products liability
> case. And I thought they were the manufacturer, and that's how I
> defended the case.
>
> After that point, as their allegations get to what was happening
> behind the scenes, this - - I think Western Equipment Manufacturing
> company - - all of these things that came to light, that they were forming
> new companies, I had no idea that any of that happened.
>
> Like, for instance, the Western Manufacturing - -  I think that
> Western Manufacturing had gone out of business, I didn't know that.
> I mean, I just didn't know. I didn't know that at all.
>
> And so the Western Manufacturing apparently - - they said it went out in June,
> I think, and before the September trial.  I had no idea that that happened.
>
> I had no idea about Mr. Thompson or Tiare, Inc. doing anything.
> I was not involved in that.  . . .  I reported both to  - - primarily Mr.
> Dawe and Darren Dyck, who was the general manager of Western
> Manufacturing. (Rec. Doc. 248, pp. 82-83)

-18-

- This Court finds the representations of Mr. Landreneau to be fully credible and has no question regarding their truthfulness.

- During the hearing, Mr. Roy stated: "Tiare, Inc. has been, and is, the corporation that was the manufacturer doing business as Western Manufacturing. We have authority to and agree and stipulate that the judgment can be amended to add Tiare, Inc., the correct name, as the judgment debtor." (Rec. Doc. 238, p. 84)

- Mr. Roy also stated: "We told them [the plaintiff's counsel] we would give you the documents you want in advance and you can do proper depositions if you go. There's no problem with that. You tell us what you want. If it's something you're entitled to, we're going to give it to you." (Rec. Doc. 248, p. 57)

- On July 31, 2013, Mrs. Roman filed a motion (Rec. Doc. 247) to continue the hearing on the motion to dismiss that was filed by Thompson and Tiare (Rec. Doc. 223), arguing that she would like to have time to take discovery on jurisdictional matters and that an anticipated motion to dismiss by other parties should be heard at the same time as the motion already filed by Thompson and Tiare.

-19-

- Oral argument on the motion to continue was held by telephone on August 7, 2013. (Rec. Doc. 249) Appearing for the defendant, Kenneth Thompson, Mr. Roy argued that he would prefer to have this Court decide the issue of jurisdiction over Mr. Thompson before any other motions are heard. This Court cited counsel to controlling jurisprudence concerning jurisdiction over successor corporations and the owners of successor corporations and reminded counsel that jurisdiction over Western Manufacturing, Inc. had already been decided. (Id., p. 2)

- Thereafter, the Court stated that it "would likely find, if called upon to do so, that a sufficient *prima facie* record has been made concerning this Court's jurisdiction over at least some of the defendants added in the amended complaint" and "is persuaded that an opportunity for jurisdictional discovery should be afforded." (Rec. Doc. 249 at 2)  The motion to continue the hearing on Thompson and Tiare's motion to dismiss was granted.  (Rec. Doc. 249)

- On August 9, 2013, Western Equipment Manufacturing, Inc.; Opal Service, Inc.; Triumph Sales, Inc.; Tristar Financial, Inc.; Avanti Agency Corporation; and William C. Wiehl (all represented by Mr. Roy) filed their motion to dismiss (Rec. Doc. 250), making the identical arguments previously articulated by Thompson in the motion filed by Thompson and Tiare.

- Also on August 9,  Tiare, Inc. filed a Petition for a Writ of Mandamus with the Fifth Circuit Court of Appeal seeking a writ "limiting the District Court to its appropriate jurisdiction by : (1) directing the District Court to vacate the magistrate's June 6, 2013 order which granted respondent's motion to amend the complaint and set an evidentiary hearing; (2) vacate the evidentiary hearing; (3) **mandate the District Court hear defendants' jurisdictional challenges**; and (4) **allow parties to conduct discovery prior to holding the evidentiary hearing**." (Court of Appeal Docket # 13-3085) (Emphasis added)[6]

- When the Court continued the hearing on the first motion to dismiss in order for jurisdictional discovery to take place, the plaintiff had already served requests for the production of documents on defendants Thompson and Tiare, and Thompson and Tiare had already responded.  The discovery was served on July 25, 2013, and it was answered on August 6 – the day before the telephone conference.

- Although Tiare's counsel had represented at the July 23 hearing that documents would be voluntarily produced, the formal discovery responses

---

[6]    The petition was denied and jdgment issued as mandate on August 13. The Court of Appeals stated "Any error can be addressed on direct appeal from a final order or judgment."

included objections to every request for production, and no documents have ever been produced.

- Thompson and Tiare entered a general objection to the discovery as "premature as this Court does not have personal jurisdiction. . . or subject matter jurisdiction." (Rec. Doc. 255-4 at 1; Rec. Doc. 255-4 at 17)

- Thompson and Tiare objected to every discovery request on the basis that the "case has been tried on the merits and finalized" and that the discovery is "not directed at the entity whose business records are sought." (Rec. Doc. 255-4 at 1-2; Rec. Doc. 255-4 at 17)

- Thompson and Tiare objected to every request for production on the basis that the requested documents "are in the possession of another entity." Rec. Doc. 255-4 at 18)

- Thompson and Tiare objected to almost every request for production on the basis that it "is irrelevant to the subject matter of this action and. . . is not calculated to lead to the discovery of admissible evidence." (Rec. Doc. 255-4.)

- In particular, when asked to produce documents relating to the responsibility for liability arising out of this lawsuit and also when asked to produce documents showing the ownership of the newly-added defendants, Thompson and Tiare objected on the basis that this is irrelevant and not reasonably

-22-

calculated to lead to the discovery of admissible evidence.  (Rec. Doc. 255-4 at 2, 4, 18, 20, 29).

• A discovery conference among counsel was held on August 27, 2013, during which the discovery was discussed without resolution of the parties' dispute. Mrs. Roman then filed the instant motion to compel.  (Rec. Doc. 255)

• Since Thompson's and Tiare's original responses were served, no supplemental or amended responses have ever been provided.

## ANALYSIS

### A. JURISDICTIONAL DISCOVERY IS APPROPRIATE

In her amended complaint, Mrs. Roman alleges that this Court has ancillary jurisdiction over the newly-added defendants,[7] as they are the successors or alter egos of the original judgment debtor, Western Manufacturing, Inc.[8] "A court may exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction

---

[7]     Rec. Doc. 210 at 3.

[8]     Rec. Doc. 210 at 5.

-23-

in that court."[9]  Therefore, the relationships between the newly-added defendants and the original defendants are relevant to the issue of jurisdiction.

In the motion to dismiss (Rec. Doc. 223), defendant Thompson argues that this Court lacks personal jurisdiction over him, and both he and Tiare argue that this Court lacks subject-matter jurisdiction over the amended complaint.  The plaintiff argues that, in order to defend against that motion, she is entitled to conduct discovery concerning the facts upon which a jurisdictional determination will ultimately rest.  Despite representing to the court of appeals in a petition for writ of mandamus that jurisdictional discovery should be allowed and the hearing on jurisdiction should go forward first, which this Court intends to do, Thompson and Tiare argue that they need not respond to jurisdictional discovery because the Court lacks jurisdiction over them.

The parties have not briefed the issue of which state's law will apply to the plaintiff's argument that the newly-added defendants are either successors or alter egos of the original defendant, and no determination has been made in that regard. For purposes of this motion, the Court assumes that California law will govern such issues since all of the defendant corporations appear to have been formed under the laws of the state of California.  Regardless of what law will ultimately be found to

---

[9]      *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002).

apply, the plaintiffs' contentions regarding alter ego and successor liability raise a plethora of factual issues.

Under California law, alter ego is a limited doctrine, which can be invoked only when recognizing and maintaining the corporate form would result in injustice to a third party.[10]  "To prevail on a claim of 'alter ego,' the third party must show (1) there is such a unity of interest that the separate personalities of the corporations no longer exist; and (2) inequitable results will follow if the corporate separateness is respected."[11]  When considering whether the unity of interest test is satisfied, a factual inquiry must be undertaken.  "Among the facts which can be considered are financial issues (e.g., was the corporation adequately capitalized?); corporate formality questions (e.g., was stock issued, are minutes kept and officers and directors elected, are corporate records segregated?); ownership issues (e.g., what is the stock ownership picture?); commingling issues (e.g., are corporate assets commingled, does the parent company merely use the corporate shell of the subsidiary to obtain goods and services for the parent company?); etc."[12]  As will be discussed in greater detail,

---

[10]    *Katzir's Floor & Home Design, Inc. v. M-MLS.Com*, 394 F.3d 1143, 1149 (9th Cir. 2004).

[11]    *Tomaselli v. Transamerica Ins. Co.*, 25 Cal.App.4th 1269, 1285, 31 Cal.Rptr.2d 433, 443 (Cal.App. 4 Dist.,1994).

[12]    *Tomaselli v. Transamerica Ins. Co.*, 25 Cal.App.4th at 1285.  See, also, *Katzir's Floor & Home Design, Inc. v. M-MLS.Com*, 394 F.3d at 1149; *In re Schwarzkopf*, 626 F.3d 1032,

below, the plaintiff's discovery requests seek the production of documents related to such issues.

Determining whether one person or entity is the successor of another also rests upon a factual inquiry.  "The general rule of successor liability under California law is that the corporate purchaser of another corporation's assets presumptively does not assume the seller's liabilities, unless:  (1) there is an express or implied assumption of liability; (2) the transaction amounts to a consolidation or merger of the two corporations; (3) the purchasing corporation is a mere continuation of the sellers; or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts."[13]  As will also be discussed in greater detail, below, the plaintiff's discovery requests seek the production of agreements relating to Thompson's and Tiare's responsibility for liability arising out of this lawsuit as well as documents concerning the formation of the various companies and any transfers of assets among them.  Those requests seem tailored to obtaining information related to the four situations under which one company might be deemed the successor of another under California law.

---

1038 (9th Cir. 2010).

    [13]    *City of San Diego v. Nat'l Steel & Shipbuilding Co.*, No. 09cv2275 AJB(BGS), 2011 WL 5104624, at *4 (S.D. Cal. Oct. 27, 2011).  See, also, *Rey v. Onewest Bank, FSB*, No. 2:12-cv-02078-MCE-GGH, 2013 WL 127829, at *2 (E.D. Cal. Jan. 9, 2013).

Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." The rule also states that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." The party requesting discovery – here, the plaintiff – bears the burden of demonstrating the necessity for discovery.[14] Discovery rules are afforded broad and liberal treatment,[15] and the control of discovery is left to the trial court's sound discretion.[16]

Jurisdictional discovery is appropriate when a motion to dismiss raises factual questions.[17] A party is not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion,[18] but jurisdictional discovery is appropriate when the existing record

---

[14] *In re MPF Holdings US LLC*, 701 F.3d 449, 457 (5th Cir. 2012); *Freeman v. United States*, 556 F.3d 326, 341-42 (5th Cir. 2009).

[15] *United States v. Holley*, 942 F.2d 916, 924 (5th Cir. 1991), citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

[16] *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009); *Williamson v. U.S. Dept. of Agriculture*, 815 F.2d 368, 382 (5th Cir. 1987); *Mayo v. Tri-Bell Industries*, 787 F.2d 1007, 1012 (5th Cir. 1986).

[17] *Wyatt v. Kaplan*, 686 F.2d 276 (5th Cir. 1982).

[18] *Freeman v. United States,* 556 F.3d at 342.

is inadequate to support a finding of personal jurisdiction and a party demonstrates that it can supplement its jurisdictional allegations through discovery.[19]

To demonstrate that it is entitled to jurisdictional discovery concerning personal jurisdiction, a plaintiff must make a "preliminary showing of jurisdiction," which is something less than a *prima facie* showing[20] and requires the presentation of factual allegations that suggest with reasonable particularity the possible existence of the necessary contacts.[21]  The decision to grant jurisdictional discovery lies within the court's discretion.[22]

The evidence in support of this motion suggests that Western Manufacturing, Inc., the original defendant in this lawsuit and Mrs. Roman's judgment debtor, never actually existed and that, despite multiple requests, Tiare was not identified as the entity actually responsible for satisfying the judgment until long after the trial when it had been turned into a "valueless" and "shelved" corporation.  The evidence suggests that Western *Equipment* Manufacturing, Inc. began in business shortly

---

[19]     *Plantbikes, LLC v. Bike Nation,* Inc., No. 2:13-CV-108, 2013 WL 3753949, *4 (S.D. Tex. July 15, 2013), citing *Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275, 1283 (Fed. Cir. 2005).

[20]     *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005).

[21]     *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d at 429.

[22]     *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1148 (5th Cir. 1985).

before trial manufacturing the exact same product that was the subject of this lawsuit. The evidence suggests that, on September 29, 2010, the day before the jury reached its verdict, Opal Services, Inc. filed liens against Tiare and Western Equipment Manufacturing, Inc. and that, on the same day, Tristar Financial filed a lien against Western Equipment Manufacturing, Inc. All three liens were secured by the same collateral.

The corporate disclosure statements filed by the newly-added defendants[23] show that Western Equipment Manufacturing, Inc., Triumph Sales, Inc., Tristar Financial, Inc., and Avanti Agency Corporation are owned by Opal Service, Inc. Thompson admitted that he was a common officer, i.e. president, in Tiare, Inc., Opal Service, Inc., and Western Equipment Manufacturing, Inc., with the sole authority to make any decisions regarding the operations of Western Manufacturing.  He, at least at some point it time, owned Opal and other companies that are named as defendants.

Counsel for Western Manufacturing, Inc., Michael Dawe, disavowed representation or affiliation with Western (and presumably Tiare, Inc.) but purported to stipulate that Tiare was liable for the judgment after its stock had been sold to

---

[23]        Rec. Doc. 250-2, 250-2, 250-4, 250-5, and 250-6.

William Wiehl – also sought to be added as a defendant.  Local counsel has similarly stipulated and now represents all of the defendants.[24]

The requests for production[25] that were propounded by the plaintiff on Thompson and Tiare seek the production of documents showing the ownership of the newly-added defendants, records of the sales and transfers of the assets of Tiare, agreements and correspondence relating to responsibility for the judgment in favor of Mrs. Roman, the identity of Tiare's distributors, suppliers, and employees; agreements between Thompson and Tiare; agreements between Thompson, Tiare, and the other newly-added defendants; as well as numerous other categories of documents.

The requested discovery is reasonably calculated to lead to the discovery of admissible evidence concerning the issues of corporate alter ego and successor liability, which were pleaded in the plaintiff's amended complaint as a basis for ancillary jurisdiction over the newly-added defendants.  Therefore, based upon the exhibits admitted into evidence and the nature of the requests for production, the

---

[24]    Pending completion of its investigation, this Court assumes that compliance with Rules 1.7 and 1.9 of the Code of Professional Conduct has been maintained.

[25]    Rec. Doc. 255-4.

Court now expressly finds that Mrs. Roman has made the preliminary showing necessary to justify jurisdictional discovery.

Under Rule 26(b)(2)(C), discovery may be limited if:  (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit.  Under Rule 26(b)(2)(C)(iii), in assessing whether the burden of the discovery outweighs its benefit, a court must consider:  (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. Thompson and Tiare have not argued that any of these considerations require the Court to preclude or limit discovery.  They have argued only that, because they *contend* the Court lacks jurisdiction over them, they are not obligated to respond to the discovery propounded by the plaintiff.

The failure to respond by Tiare, particularly after representing to this Court that it would provide documents to the plaintiff, is at *best* frivolous given counsel's admission that it is the appropriate judgment debtor.  While it may ultimately be shown that this Court does not have personal jurisdiction over Thompson, that does

not preclude jurisdictional discovery pertaining to him from taking place as a cursory review of controlling jurisprudence would reveal.  The actions of counsel at the judgment debtor examination, when combined with the contradictory actions of defense counsel in this Court, would suggest there is *no* venue or forum where the inquiries into alter-ego and successor liability can take place.

The plaintiff propounded requests for production on Thompson and Tiare, and Thompson and Tiare responded with objections.  This issue was brought to the Court's attention before the motion to compel was heard, and the Court clearly stated its intention that jurisdictional discovery should move forward.  Nonetheless, Thompson and Tiare did not supplement their discovery responses.  Further, the objections asserted in the responses are not pertaining to jurisdiction, they are objections that have no basis in fact or law and are utterly meritless.

For these reasons, Mrs. Roman's motion to compel full and complete responses to the discovery propounded to Thompson and Tiare will be granted.

## B.   SANCTIONS UNDER RULE 37

Under Fed. R. Civ. P. 37(a)(3)(B), "[a] party seeking discovery may move for an order compelling an answer. . . if: . . . a party fails to answer an interrogatory submitted under Rule 33, or . . . a party fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Rule 37(a)(4)

states that "an evasive or incomplete. . . answer, or response must be treated as a failure to . . . answer, or respond."  Rule 37(d)(2) states that a failure to respond to discovery "is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order. . ."

Additionally, under Rule 37(a)(5)(A), "[i]f the motion is granted – or if the. . . requested discovery is provided after the motion was filed – the court *must*, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." (Emphasis added).  Similar sanctions, which may be imposed in addition to other Rule 37 sanctions, are authorized under Rule 37(d)(3) for a party's failure to act, which includes a party's failure to respond to requests for the production of documents.  Rule 37 sanctions serve the dual purpose of reimbursing the movant and deterring further discovery violations.[26]  Therefore, sanctions are not to be awarded under Rule 37(a)(5)(A) if the motion was filed before a good faith attempt was made to obtain the discovery without the court's assistance, if the noncompliant party's objections were substantially justified, or if such an award would be unjust.

---

[26]     *Day v. Allstate Insurance Co.*, 788 F.2d 1110, 1114 (5th Cir. 1986).

Here, Thompson and Tiare entered a general objection to the discovery as "premature as this Court does not have personal jurisdiction. . . or subject matter jurisdiction."[27]  They also objected to every discovery request on the basis that the "case has been tried on the merits and finalized" and that the discovery is "not directed at the entity whose business records are sought."[28]  They objected to every request for production on the basis that the requested documents "are in the possession of another entity."[29]  The objections made by Thompson and Tiare do nothing more than beg the question, which is whether the court has jurisdiction over the newly-added defendants and whether any one or more of them is the person or business entity responsible for satisfying the judgment already obtained.  The defendants then objected to almost every request for production on the basis that it "is irrelevant to the subject matter of this action and. . . is not calculated to lead to the discovery of admissible evidence."[30]  The defendants' opposition memorandum does nothing more than restate the objections.[31]

---

[27]     Rec. Doc. 255-4 at 1; Rec. Doc. 255-4 at 17.

[28]     Rec. Doc. 255-4 at 1-2; Rec. Doc. 255-4 at 17

[29]     Rec. Doc. 255-4 at 18.

[30]     Rec. Doc. 255-4.

[31]     Rec. Doc. 260.

As explained in the preceding section, the Court finds that the plaintiff's requests for production are reasonably calculated to lead to the discovery of admissible evidence concerning the issues of alter ego and successor liability, which are germane to the issue of ancillary jurisdiction.  The Court also finds that the defendants' responses to the discovery requests are incomplete and evasive, and that the defendants did not file a motion for protective order which would have eliminated the potential for additional sanctions under Rule 37(d)(3).  The Court further finds that Mrs. Roman made an effort to obtain the discovery without filing a motion to compel, as evidenced by the fact that a discovery conference was held before the motion to compel was filed.[32]  The Court further finds that, once the court indicated to the parties that jurisdictional discovery should move forward, the defendants' failure to supplement their response to the requests for production in order to respond to the discovery fully and completely was substantially unjustified, especially because they failed to file a motion for protective order.  Furthermore, the Court finds that there is no reason that permitting an award of sanctions would be unjust, the defendants' failure to respond fully and completely to the discovery requests having necessitated briefing and oral argument that could have been avoided.

---

[32]        Rec. Doc. 255-1 at 1.

Accordingly, the motion to compel will be granted, the defendants will be ordered to respond fully and completely to the discovery requests not later than ten days after the date of this order, and sanctions in the form of attorneys' fees and costs in the amount of $1250.00 (one thousand two hundred fifty dollars and 00/100) as set forth in plaintiff's counsel's motion for attorney's fees (Rec. Doc. 265) will be assessed against defense counsel, Lane Roy and Tiare, Inc. to be awarded to the plaintiff.

C.   **SECTION 1927 SANCTIONS**

Sanctions may be awarded under 28 U.S.C. § 1927, at the discretion of the trial court,[33] when an attorney "so multiplies the proceedings in any case unreasonably and vexatiously" by requiring him to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  Given the history of this dispute, which was recited above, but in the absence of a motion seeking sanctions under Section 1927, the Court expressly reserves the right to consider upon presentation of a motion, whether it would be appropriate to levy sanctions against the defendants' counsel under Section 1927.

D.   **THE *PEACOCK* DECISION DOES NOT GOVERN THIS DISPUTE**

---

[33]    *Gonzalez v. Fresenius Medical Care North America*, 689 F.3d 470, 479 (5th Cir. 2012); *Cambridge Toxicology Group, Inc. v. Exnicios*, 495 F.3d 169, 180 (5th Cir. 2007).

-36-

At the September 24 hearing, the defendants argued that the issue of whether this Court has jurisdiction over the newly-added defendants is governed by the United States Supreme Court's decision in *Peacock v. Thomas*, 516 U.S. 349 (1996). The factual distinctions between *Peacock* and this case, however, refute that argument.

In *Peacock*, Thomas sued his employer, Tru-Tech, and one of its officers, Peacock, alleging that both had breached fiduciary duties in administering the employer's pension benefits plan. The suit was brought in federal court because it stated a claim under a federal statute, the Employee Retirement Income Security Act of 1974 ("ERISA.") The district court found that Tru-Tech breached its fiduciary duties, found that Peacock was not a fiduciary, and entered judgment only against Tru-Tech. There was no judgment against Peacock.

Thomas then filed a second federal-court lawsuit, this time against Peacock only. He alleged that Peacock had conspired to siphon off Tru-Tech's assets in order to prevent Thomas from satisfying the judgment against Tru-Tech and, in furtherance of the conspiracy, had fraudulently conveyed Tru-Tech's assets. Thomas sought to pierce the corporate veil under ERISA and other federal laws. The district court did pierce the veil and entered judgment against Peacock in the same amount as the judgment against Tru-Tech. The appellate court affirmed, but the Supreme Court reversed, holding that the district court lacked jurisdiction over the second lawsuit.

The issue presented to the Supreme Court was whether a federal court possesses ancillary jurisdiction over a new action in which a federal judgment creditor seeks to impose liability for a money judgment on a person not otherwise liable for the judgment.  The claim asserted against Peacock was not an ERISA claim, and Peacock had not been found liable in the first lawsuit.  The court concluded that, "[i]n a subsequent lawsuit involving claims with no independent basis for jurisdiction, a federal court lacks the threshold jurisdictional power that exists when ancillary claims are asserted in the same proceeding as the claims conferring federal jurisdiction."[34]  The court also said:  "We have never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment."[35]

The facts of *Peacock* are very different from those presented in this case.  First, Mrs. Roman did not file a new lawsuit against Thompson, Tiare, and the other newly-added defendants.  Instead, she asserted claims against them in the original lawsuit.

Second, the claim asserted against the newly-added defendants is not a new claim based on a different theory of liability.  It is the same products liability claim that was asserted against Western Manufacturing, Inc.

---

[34]    *Peacock v. Thomas*, 516 U.S. 349, 355 (1996).

[35]    *Peacock v. Thomas*, 516 U.S. at 357.

Third, Mrs. Roman is not attempting to impose liability on an entity that was not responsible for the original judgment.  Instead, now that she has been told that Western Manufacturing, Inc., the original judgment debtor, never existed, Mrs. Roman is attempting to determine who is the entity (or entities) liable for the original judgment based on theories of alter-ego or successor liability.

Fourth, the ancillary jurisdiction issue presented in the *Peacock* case is not presented in this case.  Here, a ruling was made in 2008 that this Court had subject-matter jurisdiction over the action and specific personal jurisdiction over Western Manufacturing, Inc.[36]  The defendants do not argue that their addition to the lawsuit destroys the diversity of citizenship on which this Court's subject-matter jurisdiction is grounded.  Furthermore, if Thompson or Tiare is the successor corporation or individual alter ego of Western Manufacturing, Inc., this Court has personal jurisdiction over them.  "[B]ecause the two corporations (or the corporation and its individual alter ego) are the *same entity*, the jurisdictional contacts of one *are* the jurisdictional contacts of the other."[37]  This Court authorized jurisdictional discovery so that a determination can be made concerning whether Thompson or Tiare is the

---

[36]     Rec. Doc. 40; Rec. Doc. 43.

[37]     *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002) (emphasis in original).

successor or alter ego of Western Manufacturing, Inc.  If so, there is no jurisdictional issue to be resolved – the jurisdictional findings as to Western Manufacturing, Inc. will be imputed to Thompson or Tiare.  That is precisely why jurisdictional discovery is important in this case and has been ordered to proceed.

*Peacock* presents an entirely different factual scenario and, consequently, does not control the jurisdictional issue raised in Thompson's and Tiare's motion to dismiss or in the instant motion to compel.

## CONCLUSION

For the reasons fully explained above,

IT IS ORDERED that the plaintiff's oral motion made during the hearing on September 24, 2013 to adopt the exhibits offered by the plaintiffs at the evidentiary hearing on July 23, 2013 is GRANTED, and the exhibits are admitted into evidence in support of the plaintiff's motion to compel.

IT IS FURTHER ORDERED that the plaintiff's motion to compel (Rec. Doc. 255) is GRANTED.

IT IS FURTHER ORDERED that the defendants shall serve on the plaintiff, not later than ten days after the date of this order, full and complete responses to the requests for production of documents propounded by the plaintiffs and served on the defendants on or after July 25, 2013.

-40-

IT IS FURTHER ORDERED that plaintiff's motion for attorney's fees (Rec. Doc. 265) is granted and that sanctions be levied against  Tiare, Inc. and attorney L. Lane Roy pursuant to Fed.R.Civ.P. 37 in the amount of One thousand Two Hundred and Fifty Dollars to be paid within ten days of this order.

Signed at Lafayette, Louisiana, this 4th day of October 2013.

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE